Alan Gura (SBN 178,221)
Owen Yeates (pro have vice pending)
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW, Ste. 801
Washington, DC 20036
Phone: 202-301-3300
agura@ifs.org
oyeates@ifs.org

James R. Sutton (SBN 135,930)
Nicholas Sanders (SBN 307,402)
THE SUTTON LAW FIRM
150 Post St., Ste. 405
San Francisco, CA 94108
Phone: 415-732-7700
jsutton@campaignlawyers.com
nsanders@campaignlawyers.com

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCANS SUPPORTING PROP B, EDWIN M. LEE ASIAN PACIFIC DEMOCRATIC CLUB PAC SPONSORED BY NEIGHBORS FOR A BETTER SAN FRANCISCO ADVOCACY, and TODD DAVID,<br><br>*Plaintiffs*,<br><br>v.<br><br>DAVID CHIU, in his official capacity as San Francisco City Attorney, the SAN FRANCISCO ETHICS COMMISSION, CHESA BOUDIN, in his official capacity as San Francisco District Attorney, and the CITY AND COUNTY OF SAN FRANCISCO,<br><br>*Defendants*. | No.: 22-2785<br><br>**COMPLAINT**<br><br>(First and Fourteenth Amendments, 42 U.S.C. § 1983) |

INTRODUCTION

1.     San Francisco coopts speakers' messages about political candidates and ballot measures, forcing speakers not just to replace their message with what the City wants said, but to put the City's message front and center, before listeners hear anything else. The City, however, forgets that "legislative restrictions on . . . advocacy of the passage or defeat of legislation" are "wholly at odds with the guarantees of the First Amendment." *Meyer v. Grant*, 486 U.S. 414, 428 (1988) (quoting *Buckley v. Valeo*, 424 U.S. 1, 48-50 (1976) (per curiam)) (quotation marks omitted). The City's displacement of people's political speech cannot survive constitutional scrutiny.

2.     No governmental interest underlies the City's on-communication disclosure requirements for secondary donors—donors to a speaker's donors. The City itself satisfies any interest it may have in an informed electorate by making all the donor disclosure available on the internet. S.F. Campaign and Governmental Conduct Code § 1.110(a) ("S.F. Code"). The City nonetheless demands that speakers disclose on the face of their communications their top three donors and, if any such donor is a committee, that speakers further disclose that donor's top two contributors. Audio and video advertisements must begin with this information, distracting and driving away listeners before they even hear the speaker's message. Contrary to the City's demands, however, the First Amendment leaves to speakers the right to decide "what to say and what to leave unsaid." *Hurley v. Irish-American Gay, Lesbian and Bisexual Grp.*, 515 U.S. 557, 573 (1995) (quotation marks omitted).

3.     Todd David formed San Franciscans Supporting Prop B (altogether "the Committee") with the goal of supporting San Francisco Charter Amendment B ("Prop B" or "Proposition B") in the June 7, 2022 election. Plaintiff Edwin M. Lee Asian Pacific Democratic Club PAC sponsored by Neighbors for a Better San Francisco Advocacy ("Ed Lee Dems") supports the Committee's advocacy given Ed Lee Dems's longstanding concerns about affordable housing in San Francisco.

4.     Plaintiffs do not challenge any law requiring that the Committee disclose its

1
Complaint (No.: 22-2785)

donors to the City, nor do they challenge any law requiring that the City disclose that information to the public. Plaintiffs do not even challenge the requirement that the Committee list its own donors on its communications. But requiring that the Committee disclose its donors' donors on its communications is the breaking point: Going so far swallows the Committee's communications, scares away donors and otherwise limits speakers' and donors' ability to speak and associate, and misleads voters as to who supports the Committee's communications. Absent injunctive relief, Plaintiffs will not be able to associate with one another and share their communications with voters. This Court should strike down San Francisco's redundant and burdensome on-communication secondary donor disclosure demands, and ensure that the City and its officials stop violating the Committee's and its donors' First Amendment rights.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331, because this action arises out of the First and Fourteenth Amendments to the United States Constitution, and under 42 U.S.C. § 1983, because it involves a deprivation of rights secured by the Constitution.

6. Venue for this action is proper in the United States District Court for the Northern District of California because "a substantial part of the events [and] omissions giving rise to the claim occurred" and are occurring here and because a defendant resides within it. 28 U.S.C. § 1391; see also Civil L.R. 3-2(c).

## PARTIES

7. Plaintiff San Franciscans Supporting Prop B is a primarily formed independent expenditure committee that registered with the California Secretary of State and is required to file campaign reports with the San Francisco Ethics Commission. It was formed for the purpose of supporting the passage of Prop B, which would change the duties, composition, and appointment method for the Building Inspection Commission.

8. Plaintiff Todd David is the Committee's treasurer. In this capacity, Mr. David oversees the Committee's fundraising and expenditures. Mr. David has had substantial experience in San Francisco politics, including managing the San Francisco Parent PAC, which supports and opposes local measures and candidates for school board.

9. Plaintiff Ed Lee Dems is a grassroots organization dedicated to engaging Asian Pacific Islander ("API") Americans in the Democratic Party, supporting strong API leaders, and empowering young API people in the political process. It also works to benefit the API community and San Franciscans in general by advocating for increased neighborhood safety; affordable housing and health care; supporting local public schools, public transportation, and public parks; and furthering civil rights, women's rights, and LGBT rights. Ed Lee Dems is supporting the Committee's efforts because Prop B's reforms will help fight San Francisco's affordable housing problems.

10. Defendant David Chiu is the City Attorney for the City and County of San Francisco. He is responsible for civil enforcement of Article 1, Chapter 1 of the San Francisco Campaign and Governmental Conduct Code (the "San Francisco Campaign Finance Reform Ordinance" or "Ordinance"). S.F. Code § 1.104 (definition of "Enforcement authority"); *id.* at § 1.102 (name for Chapter 1); *id.* at §§ 1.166, 1.168, 1.170 (discussing duties and authority in civil actions, including penalties pursued). Mr. Chiu is sued in his official capacity as City Attorney.

11. Defendant Chesa Boudin is the District Attorney for the City and County San Francisco. He is responsible for criminal enforcement of the Ordinance. *Id.* at § 1.104 (definition of "Enforcement authority"); *id.* at §§ 1.168, 1.170 (discussing duties and authority in criminal actions, including penalties pursued). Mr. Boudin is sued in his official capacity as District Attorney.

12. Defendant San Francisco Ethics Commission is responsible for administrative enforcement of the Ordinance, as well as investigating complaints and referring them to the City Attorney and the District Attorney. *Id.* at § 1.104 (definition

of "Enforcement authority"); *id.* at §§ 1.164, 1.166, 1.168, 1.170 (defining duties and authority).

13. Defendant City and County of San Francisco ("San Francisco" or "the City") is the municipal corporation governing the City of San Francisco, California. San Francisco has enacted and is enforcing the laws challenged in this complaint, including through the City Attorney, District Attorney, and Ethics Commission.

## FACTS

*San Francisco's Impositions on Protected Campaign Speech*

14. A "'Committee' means any person or combination of persons who directly or indirectly . . . [r]eceives contributions totaling two thousand dollars ($2,000) or more in a calendar year," or that "[m]akes independent expenditures totaling one thousand dollars ($1,000) or more in a calendar year." Cal. Gov't Code § 82013(a)-(b); *see* S.F. Code § 1.104 (defining "Committee . . . as set forth" in the California code).

15. "[A]ll committees making expenditures which support or oppose any candidate for City elective office or any City measure shall . . . comply with" written and spoken on-communication donor disclosure requirements. S.F. Code § 1.161(a).

16. A "'Primarily formed committee' means a committee . . . which is formed or exists primarily to support or oppose . . . [a] single candidate [or] . . . single measure." Cal. Gov't Code § 82047.5(a)-(b).

17. Committees must include specific content in advertisements, which are broadly defined as "any general or public communication that is authorized and paid for by a committee for the purpose of supporting or opposing . . . a ballot measure or ballot measures." Cal. Gov't Code § 84501(a)(1).

18. San Francisco requires that primarily formed committees include on the face of such communications what it calls "disclaimer requirements," which include both proper disclaimers and on-communication disclosure. The communication must first state, "Ad paid for by [committee's name]." City and Cty. of S.F. Ethics Comm'n, *Independent Expenditure Ads Referring to City Candidates*, https://bit.ly/38l7KcE

(emphasis removed) ("IE Reg."); *see also* Cal. Gov't Code § 84502(a)(1) (incorporated into City law by S.F. Code § 1.106).

19. Next, the communication must state "both the name of and the dollar amount contributed by each of the top three major contributors of $5,000 or more." S.F. Code § 1.161(a)(1). This disclosure of the primary donors should begin by stating, "Committee major funding from . . . ." IE Reg.; *see also* Cal. Gov't Code § 84501, 84503 (state rule requiring on-communication disclosure of top three primary donors, but limited to those giving $50,000 or more).

20. "If any of [those] top three major contributors is a committee, the disclaimer must also disclose both the name of and the dollar amount contributed by each of the top two major contributors of $5,000 or more to that committee." S.F. Code § 1.161(a)(1).

21. After listing the donors to the committee (the primary donors) and the donors to the donors (secondary donors), a communication must further tell voters that the speaker's financial disclosures, including the primary and secondary donors, is already available at the Commission's website. S.F. Code § 1.161(a)(2); *see* IE Reg. ("**Financial disclosures are available at sfethics.org**" (emphasis in original)).

22. In print ads designed to be individually distributed, such as mailers and newspaper ads, the text must be at least as big as Arial 14-point font and appear in a printed or drawn box with a solid white background. IE Reg. In larger print ads, including yard signs and billboards, the text of each line must be big enough to take up "at least five percent (5%) of the advertisement." *Id*.

23. Each of the primary contributors must begin separate lines. *Id*. Each of those lines must be numbered by adding "the numerals 1,2, and 3, respectively, before each major contributor's name." S.F. Reg. 1.161-3. Each of the secondary contributors "must be included immediately following the name and contribution amount of the relevant major contributor. . . [and] must be separated from the name of and dollar amount contributed by the corresponding major contributor by one space, followed by one em

dash, followed by one space, followed by the words 'contributors include,' followed by one space." *Id*.

24. Including the speaker's name and committee funding line, the three primary donors, and the notice where to find financial disclosures, the City's disclaimer and disclosure requirements must consume at least five lines.

25. For the Committee's communications, the City's requirements consume 100% of a two by four inch print "ear" ad, about 70% of a five by five inch print ad, about 35% of a five by ten inch print ad, and about 23% of the face of an 8.5 by 11 inch mailer.

26. Audio and video communications include radio ads, telephone calls, audio only electronic media ads, television, and video ads. Speakers must ensure that listeners or viewers of any audio or video message hear the on-communication disclosure before any other part of the message, by giving the disclosure at the beginning of the advertisement. S.F. Code § 1.161(a)(5). The speaker may, however, omit speaking the dollar amounts. *Id*.

27. As with print ads, audio and video communications must also include the disclaimers stating the speaker's name ("**Ad paid for by**"). IE Reg. (emphasis in original). Then follows the on-communication disclosure, which must begin with the statement "Committee major funding from," followed by each of the top primary donors and their top two secondary donors. *Id*. The disclosure section must end by stating that the information is also available at the Commission's website: ("**Financial disclosures are available at sfethics.org.**") *Id*. (emphasis in original).

28. For the Committee's video communications, the City's spoken requirements will swallow 32-33 seconds, or all of any ad that lasts less than 30 seconds. And the spoken requirements consume 50% or more of ads that last between 30 and 60 seconds.

29. In addition, the written disclaimer and disclosure accompanying a video ad must occupy the screen for the first five seconds of a 30-second or less ad, and they

must occupy the screen for the first 10 seconds of a longer ad. IE Reg.; *see also* Cal. Gov't Code § 84504.1(a); S.F. Reg. 1.161-3. The "size for the smallest letters must be four percent of the height of the display screen." IE Reg. Moreover, "[e]ach top contributor must be disclosed on a separate horizontal line separate from other text." *Id*. All this material must be enveloped in a solid black background and occupy at least 33% of the bottom of the screen. *Id*.; *see also* Cal. Gov't Code § 84504.1(b)(1).

30. The City punishes violations of these requirements with criminal, civil and administrative penalties. S.F. Code § 1.170.

31. Knowing or willful violations are misdemeanors, punishable by fines up to $5,000 for each violation, up to six months in county jail, or both. *Id*. at § 1.170(a). Failure to report contributions or expenditures is punishable by the greater of $5,000 or three times the amount not reported. *Id*.

32. Intentional or negligent violations are enforced with civil fines up to $5,000 for each violation or three times the amount not reported. *Id*. at § 1.170(b).

33. Any other violations are punished administratively, with the same potential fines. *Id*. at § 1.170(c); San Francisco Charter, appendix C, § C3.699-13(c)(i)(3).

34. Any individual "may file a complaint with the Ethics Commission, City Attorney, or District Attorney," which are required to investigate the complaint. S.F. Code § 1.168(a). Upon belief that a violation has occurred, the Commission must forward any complaint it receives to the district attorney and City Attorney. San Francisco Charter, appendix C, § C3.699-13. "The City Attorney . . . may bring a civil action to enjoin violations of or compel compliance . . . ." *Id*. at § 1.168(b). If the City Attorney and District Attorney do not take action, the Commission may conduct its own investigation and initiate a hearing to enforce the provisions. San Francisco Charter, appendix C, § C3.699-13.

35. If a committee does not comply with the on-communication donor disclosure requirement, its "treasurer[] . . . may be held personally liable for violations." S.F. Code § 1.170(g).

*Impact on Plaintiffs' Speech*

36. The Committee wishes to voice its support for Proposition B in the upcoming election, including internet video ads that are 15, 30, and 60 seconds long, newspaper print ads that measure two by four inches, five by five inches, and five by ten inches, and mailers. But the Committee does not want to lose a large part of every communication to accommodate the City's compelled speech.

37. The Committee has three donors that have contributed more than five thousand dollars each, satisfying the monetary threshold for the on-communication disclosure requirement.

38. The secondary on-communication donor disclosure requirements are triggered for two of the Committee's primary contributors, as they each have two donors who have given them at least $5,000. *Id.* at § 1.161(a)(1).

39. The on-communication disclosure requirement for secondary donors will force the Committee to alter its message and to surrender space and time to accommodate the government's speech.

40. The City's on-communication disclosure requirements, taken together, will consume 32-33 seconds of the Committee's video ads. The City's requirements will force the Committee to forego video ads less than 30 seconds entirely, and—combined with the written disclosure that must occupy the opening of the video ad—make even its longer ads ineffective.

41. The City's requirements also consume the Committee's print messages, including newspaper ads and mailings. The requirements will force the Committee to forego shorter print messages entirely and take over the messages of longer ads.

42. The secondary donors have not contributed to the Committee or supported the Committee and its messaging in any other way. They are not involved in the Committee's governance or spending decisions, and they have no role in selecting candidates to support or in choosing what content will be shown in the Committee's communications. Nonetheless, the Committee must now identify four secondary

donors—Neighbors for a Better San Francisco Advocacy Committee, Arthur Rock, Neighbors for a Better San Francisco Advocacy Committee, and David Chiu for Assembly 2022—on the face of its communications.

43. The City's disclosure requirements have compromised the Committee's ability to associate with other committees to advance its messages. If the donors to Ed Lee Dems were listed on the Committee's ads, Ed Lee Dems would lose future donations from current donors. Ed Lee Dems would therefore be required to withdraw its support from the Committee.

44. The Committee would like to share its messages in support of Proposition B in the 2022 election, without the changes in content demanded by the City, but it refrains from doing so because it fears the penalties for exercising its First Amendment rights. Accordingly, it will refrain from speaking absent a restraining order and further injunctive relief.

45. Plaintiff David fears possible liability for actions the Committee takes contrary to S.F. Code § 1.161. He has repeatedly formed committees before, including Yes on Prop B, Committee in Support of the Earthquake Safety and Emergency Response Bond, for the March 3, 2020 election ballot. He and that committee filed a challenge before this Court, but it was dismissed as moot once the election passed. Mr. David will engage in materially and substantially similar activity in the future, establishing committees and using them to speak about San Francisco candidates and measures. He will continue to be silenced as long as the City forces his committees to carry government messages.

46. Plaintiff Ed Lee Dems has a long history of participating in San Francisco politics. It plans to engage in engage in substantially and materially similar conduct in the future, supporting committees like San Franciscans Supporting Prop B. But Ed Lee Dems will be unable to do so as long as San Francisco's secondary on-communication donor disclosure requirements remain in place.

COUNT I:
RIGHT OF FREE SPEECH, U.S. CONST., AMENDS. I, XIV
42 U.S.C. § 1983

47. Plaintiff realleges and incorporates by reference paragraphs 1 through 46.

48. The First Amendment, which applies against Defendants by operation of the Fourteenth Amendment, guarantees freedom of speech.

49. The Supreme Court has long held that "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. La.*, 379 U.S. 64, 74-75 (1964). And the First Amendment's protection of that self-governance requires "that a speaker ha[ve] the autonomy to choose the content of his own message." *Hurley*, 515 U.S. at 573.

50. Moreover, "by compelling [committees] to speak a particular message, it 'alters the content of [their] speech.'" *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2365 (2018) (quoting *Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 795 (1988)). Such content based laws are presumptively unconstitutional.

51. San Francisco's secondary donor on-communication disclosure requirement forces the Committee to either give up its protected First Amendment right to speak about a candidate or proclaim the City's message as part of its speech.

52. This compelled speech requirement cannot satisfy the strict scrutiny or exacting scrutiny standards required by the U.S. Supreme Court for compelled speech and disclosure laws.

53. On its face, and as applied against Plaintiffs, Defendants' commandeering of political communications under S.F. Code § 1.161(a) and S.F. Regulation 1.161-3 violates the First Amendment right to speech.

54. By enforcing these provisions, Defendants, under the color of law, deprive Plaintiffs of the right of free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983 and are therefore entitled to damages; declaratory and

preliminary and permanent injunctive relief against enforcement and maintenance of Defendants' unconstitutional customs, politics, and practices; and attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT II:
RIGHT OF ASSOCIATION, U.S. CONST., AMENDS. I, XIV
42 U.S.C. § 1983

55. Plaintiff realleges and incorporates by reference paragraphs 1 through 46.

56. The First Amendment, which applies against Defendants by operation of the Fourteenth Amendment, guarantees freedom of association.

57. The Supreme Court has long held that "the right of association is a basic constitutional freedom that is closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society." *Fed. Election Comm'n v. Nat'l Right to Work Comm.*, 459 U.S. 197, 206-07 (1982) (citation and quotation marks omitted). "Protected association furthers a wide variety of political, social, economic, educational, religious, and cultural ends, and is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021) (quotation marks omitted). In particular, "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *Id.* (quotation marks omitted) (alteration in original).

58. In driving away potential donors, San Francisco's on-communication secondary donor disclosure requirement forces the Plaintiffs and others to give up their First Amendment right to freely associate with others, preventing them from strengthening their voices and getting their messages out.

59. The compelled speech requirement at S.F. Code § 1.161(a) and S.F. Regulation 1.161-3, in forcing Plaintiffs and others to give up their right to association, cannot satisfy the scrutiny required for First Amendment violations, either facially or as applied against Plaintiffs.

11
Complaint (No.: 22-2785)

60. By enforcing these provisions, Defendants, under the color of law, deprive Plaintiffs of the right to freedom of association, in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983 and are therefore entitled to damages; declaratory and preliminary and permanent injunctive relief against enforcement and maintenance of Defendants' unconstitutional customs, politics, and practices; and attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

A. A declaration that on its face, the secondary donor on-communication disclosure requirements at S.F. Code § 1.161(a) and S.F. Regulation 1.161-3 violate Plaintiffs' First Amendment rights to freedom of speech and association;

B. A declaration that, as applied to Plaintiffs, the secondary donor on-communication disclosure requirement at S.F. Code § 1.161(a) and S.F. Regulation 1.161-3 violate Plaintiffs' rights to freedom of speech and association;

C. Preliminary and permanent injunctive relief barring Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the secondary donor on-communication disclosure requirement in S.F. Code § 1.161(a) and S.F. Regulation 1.161-3 or any successor sections thereto;

D. Preliminary and permanent injunctive relief barring Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the secondary donor on-communication disclosure requirement in S.F. Code § 1.161(a)(1) and S.F. Regulation 1.161-3 or any successor sections thereto against Plaintiffs;

E. Against the City and against the other Defendants in their official capacities, an award of nominal damages in the amount of $17.91;

F.     Ordinary taxable costs of suit;

G.     Attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

H.     Any other relief this Court may grant in its discretion.

Dated: May 11, 2022

*/s/ Alan Gura*
Alan Gura (SBN 178221)
Owen Yeates (pro hac vice pending)
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave. NW, Ste. 801
Washington, DC 20036
agura@ifs.org
oyeates@ifs.org
Phone: 202-301-3300

*/s/ Nicholas Sanders*
Nicholas Sanders (SBN 307,402)
James R. Sutton (SBN 135,930)
THE SUTTON LAW FIRM
150 Post St., Ste. 405
San Francisco, CA 94108
Phone: 415-732-7700
nsanders@campaignlawyers.com
jsutton@campaignlawyers.com

*Counsel for Plaintiffs*