United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCANS SUPPORTING PROP B, et al.,

Plaintiffs,

v.

DAVID CHIU, et al.,

Defendants.

Case No. 22-cv-02785-CRB

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

On June 7, 2022, San Francisco will hold its second of three elections this year. In addition to choosing candidates for fourteen offices, residents will vote on eight local ballot measures on issues ranging from the solicitation of behested payments to the design of the Refuse Rate Board. See Future Elections, https://sfelections.sfgov.org/future-elections (accessed June 1, 2022); Fed. R. Evid. 201(b). Among these ballot measures is Proposition B ("Prop B"), which would modify the City Charter to change the composition and appointment structure of the City's Building Inspection Commission. David Decl. (dkt. 9-1) ¶¶ 3, 4. Plaintiffs San Franciscans Supporting Prop B ("SPB"), Edwin M. Lee Asian Pacific Democratic Club PAC ("Ed Lee Dems"), and Todd David support the passage of Prop B. Ed Lee Dems has donated $5,000 to SPB. Cheng Decl. (dkt. 9-7) ¶ 3. David is the founder and treasurer of SPB. David Decl. ¶ 2.

Under a law passed by nearly 77% of the voters, committees in San Francisco must include on their advertisements a disclaimer disclosing their secondary contributors. SF Code § 1.161(a)(1), (5). That is, SPB must disclose to voters not only that Ed Lee Dems is one of its major contributors, but also the top two recent contributors to Ed Lee Dems.

United States District Court
Northern District of California

On May 11, Plaintiffs sued City Attorney David Chiu, District Attorney Chesa Boudin, San Francisco Ethics Commission, and the City of San Francisco, contending that the secondary-contributor disclaimer requirement burdens their right to associate and chills political donations in violation of the First Amendment. Compl. (dkt. 1). They moved for a temporary restraining order and preliminary injunction. TRO Mot. (dkt. 9). The Court rejected a nearly identical argument two years ago. See Yes on Prop B v. City & Cnty. of San Francisco, 440 F. Supp. 3d 1049, 1057–62 (N.D. Cal.), appeal dismissed as moot, 826 F. App'x 648 (9th Cir. 2020). Because intervening law has not changed and the facts are not meaningfully distinct, the Court DENIES Plaintiffs' motion.

## I. BACKGROUND

### A. Statutory Scheme

Under California law, any person or group of people that raises at least $2,000 or spends at least $1,000 for political purposes in a given year must register as a committee. Cal. Gov't Code § 82013. Political advertising by committees is subject to a plethora of disclaimer and disclosure requirements under California and San Francisco law. See, e.g. Cal. Gov't Code §§ 84200, 84200.5, 84202.3, 84203, 84502; see also, e.g., SF Code § 1.161.

As relevant here, San Francisco voters enacted a new disclaimer requirement when they approved Proposition F in 2019. Prop F passed with 76.89% of the vote. See RJN Ex. B (dkt. 31-2) at 6; Fed. R. Evid. 201(b). Under Prop F, all ads paid for by "primarily formed" independent expenditure and ballot measure committees must include a disclaimer identifying the committee's top three donors of $5,000 or more. SF Code § 1.161(a)(1). If one of those contributors is itself a committee, the ad must also disclose that committee's top two donors of $5,000 or more in the last five months. Id. In all ads other than audio ads, the names of both primary and secondary contributors must be followed by the amount of money they contributed. Id. § 1.161(a)(5). On written ads, the disclosure must be in 14-point font (rather than 12-point font, as was the case before

United States District Court
Northern District of California

Proposition F). Id. § 1.161(a)(3).

### B. This Case

In support of passing Prop B, SPB has raised $15,000—$5,000 each from three different committees. David Decl. ¶ 6. On any ads produced by SPB, San Francisco law requires it to include the following disclaimer:

> Ad paid for by San Franciscans Supporting Prop. B 2022.
> Committee major funding from:
> 1. Concerned Parents Supporting the Recall of Collins, Lopez and Moliga ($5,000) - contributors include Neighbors for a Better San Francisco Advocacy Committee ($468,800), Arthur Rock ($350,000).
> 2. BOMA SF Ballot Issues PAC ($5,000).
> 3. Edwin M. Lee Asian Pacific Democratic Club PAC sponsored by Neighbors for a Better San Francisco Advocacy ($5,000) - contributors include Neighbors for a Better San Francisco Advocacy Committee ($100,000), David Chiu for Assembly 2022 ($10,600).
> Financial disclosures are available at sfethics.org.

See David Decl. Ex 4 (dkt. 9-5) (five by ten ad); see also David Decl. ¶ 12.

Plaintiffs argue that "the on-communication secondary donor disclosure requirements . . . are unconstitutional and should be enjoined." TRO Mot. (dkt. 9) at 3. Their motion is an as-applied challenge. See Proposed Order (dkt. 11) (proposing that the Court "preliminarily [enjoin] Defendants and their agents, officers, and representatives from enforcing against Plaintiffs the on-communication disclosure requirements for secondary donors at S.F. Code § 1.161(a)"). In support of their motion, Plaintiffs include:

- exhibits of their proposed ads with the disclaimers (dkts. 9-2 to 9-6)
- a declaration by David (founder and treasurer of SPB) (dkt. 9-1)
- a declaration by Jay Cheng (treasurer of Ed Lee Dems) (dkt. 9-7)
- a declaration by Nicole Derse (founder and principal of 50+1 Strategies, a management and political consulting firm) (dkt. 9-8)
- a declaration by Andrew Sinn (chief financial and operations officer for 50+1 Strategies) (dkt. 9-9)

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" that should only be awarded

United States District Court
Northern District of California

upon a clear showing that the plaintiff is entitled to such relief. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. See id. at 20. Alternatively, the moving party must demonstrate that "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," and that the other two Winter elements are met. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). The "[l]ikelihood of success on the merits is the most important Winter factor." Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (internal quotation marks omitted). These same principles apply to a motion for a TRO. See Martinez Franco v. Jennings, 456 F. Supp. 3d 1193, 1196–97 (N.D. Cal. 2020).

## III. DISCUSSION

The Court already rejected Plaintiffs' arguments in a prior case. The Court reaches the same conclusion here because the law has not changed and Plaintiffs still have not provided sufficient evidence in support of their challenge.

### A. Likelihood to Succeed

#### 1. The Prior Case

Before the March 3, 2020 election, the Court heard a nearly identical First Amendment challenge to this law by Yes on Prop B, an independent expenditure committee formed to support the Prop B in that election,[1] and David himself. See Prop B, 440 F. Supp. 3d at 1049. In Prop B, the Court analyzed the disclaimer law under "exacting scrutiny," which "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." Id. at 1054 (quoting Citizens United v. FEC, 558 U.S. 310, 366–67 (2010)); accord Human Life of Wash., Inc. v. Brumsickle, 624

---

[1] Although both the instant case and the 2020 case involved the same or similar plaintiffs in favor of something called Prop B, the Prop Bs are completely unrelated. The March 2020 proposal involved an earthquake safety and emergency response bond, and the June 2022 proposal involves proposed changes to the city's Building Inspection Commission.

F.3d 990, 1013 (9th Cir. 2010) ("[T]he Supreme Court has made clear that exacting scrutiny, not strict scrutiny, is applicable to campaign finance disclosure requirements.").

The Court reached two holdings in Prop B. First, the Court enjoined the enforcement of Prop F as to Yes on Prop B's smaller advertisements, holding that it failed exacting scrutiny because the disclaimer would take up so much of the advertisement that it would swamp Yes on Prop B's ability to speak. Id. at 1056. But the Court did not enjoin enforcement of the law as to its larger ads, as the disclaimer was sufficiently small that Yes on Prop B could still convey its message. The Court noted that Citizens United upheld by an 8-1 vote a four-second disclaimer in a ten-second advertisement, thus "establish[ing] that a disclaimer may commandeer a prominent position in a political ad." Prop B, 440 F. Supp. 3d at 1055; see Citizens United, 558 U.S. at 367–71. The Court noted that the Ninth Circuit has found a "sufficiently important" governmental interest in "providing the public with information about who is trying to sway its opinion" because of the "complex detail involved in ballot initiatives, and the sheer volume of relevant information confronting voters." Prop B, 440 F. Supp. 3d at 1055 (quoting Brumsickle, 624 F.3d at 1017–18). Considering Prop F in light of "the type of disclaimer, relevant advertisement, and various other case-specific factors," the Court concluded that it passed exacting scrutiny with regard to the larger ads. Prop B, 440 F. Supp. 3d at 1056.

Second, the Court addressed the only issue on which Plaintiffs seek relief now: whether the secondary-contributor disclaimer requirement was constitutional. See id. at 1057–58; see TRO Mot. at 3 (stating that this is the sole "issue[] to be decided"). The Court found that the government's informational interest as to secondary contributors was "sufficiently important" because it provided the public with information about who was trying to sway its opinion given that "individuals and entities interested in funding election-related speech often join together in ad hoc organizations with creative but misleading names." Id. at 1058 (quoting ACLU v. Heller, 378 F.3d 979, 994 (9th Cir. 2004)). "[R]eporting and disclosure requirements can expose the actual contributors to such groups and thereby provide useful information concerning the interest supporting or

opposing a ballot proposition." Id. (quoting Heller, 378 F.3d at 994). The Court rejected the plaintiffs' argument that the disclaimers were unnecessary because other laws made the information available online: "[i]f [this argument] were correct, no disclaimer would withstand constitutional muster if all it did was provide information that was already on the internet." Id. After all, Citizens United had approved of a disclaimer that was at least partially redundant of reporting requirements. And although the disclaimer affected the content of the communication itself (i.e., rather than just disclosing information in a form to the Ethics Commission), see Heller, 378 F.3d at 987, the Ninth Circuit had upheld these disclaimers as a "useful shorthand for evaluating the speaker behind the sound bite," Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1106 (9th Cir. 2003).

Next, the Court evaluated the purported burdens of the rule on plaintiffs' First Amendment rights: (1) that it burdened their associational rights, and (2) that it impermissibly chilled political contributions. The Court noted first that Prop F did not require any entity to fund speech that it disagreed with. Rather, the associational rights argument "reduce[d] to a theory . . . [that the committee] is being forced to associate with its secondary contributors because the disclaimers will confuse voters into believing that Yes on Prop B is more closely associated with its secondary contributors than it actually is." Prop B, 440 F. Supp. 3d at 1059. Yet "the Supreme Court has flatly rejected a virtually identical voter confusion theory of association." Id. at 1059–60. In Washington State Grange v. Washington State Republican Party, the Court rejected a challenge to a Washington law passed by initiative under which, at the beginning of election season, each candidate could choose a "party preference" to be printed on the ballot, and the named party had no recourse even when the candidate was "unaffiliated with, or even repugnant to" it. 552 U.S. 442, 447 (2008). The Court held that the associational rights argument failed because there was "no basis to presume that a well-informed electorate will interpret a candidate's party-preference designation to mean that the candidate is the party's chosen nominee or representative or that the party associates with or approves of the candidate." Id. at 454. The idea "that voters will misinterpret the party-preference designation" was

"sheer speculation." Id. at 454. That was particularly true because "it was the voters . . . themselves, rather than their elected representatives, who enacted" the law through initiative. Id. at 455. Because there was little burden on the associational rights, the state's "asserted interest in providing voters with relevant information about the candidates on the ballot is easily sufficient to sustain" the law. Id. at 458. Similarly, the Prop B plaintiffs had provided no evidence that San Francisco voters were confused about the association between a committee and its secondary contributors. That was particularly so because a supermajority of the voters themselves enacted the law that required this disclaimer. Thus, there was no cognizable burden on Yes on Prop B's associational rights and the informational interest was sufficient.

The Court also rejected the second asserted First Amendment burden—that the secondary contributor disclosure requirement chilled political contributions. The Court noted that the Ninth Circuit has held that the possibility that "individuals who would prefer to remain anonymous [will be deterred] from contributing to a ballot measure committee" establishes only a "modest burden" on First Amendment rights. Prop B, 440 F. Supp. 3d at 1061 (quoting Family PAC v. McKenna, 685 F.3d 800, 806 (9th Cir. 2012)). Although disclosure requirements "may burden the ability to speak," "they impose no ceiling on campaign-related activities and do not prevent anyone from speaking." Citizens United, 558 U.S. at 366 (citations and quotations omitted). Generalized evidence that people may "think twice" about contributing to a political committee if their names are disclosed is not sufficient: to show a cognizable First Amendment burden, a party must present "evidence suggesting . . . that [the law] actually and meaningfully deter[s] contributors." Family PAC, 685 F.3d at 807. Because Yes on Prop B failed to meet this evidentiary burden, the asserted informational interest was sufficient.

The Ninth Circuit dismissed the appeal as moot. See Prop B, 826 F. App'x at 649 (noting that "the record is devoid of any detail indicating that Appellants would engage in the type of conduct subject to Proposition F—i.e., running advertisements," which was particularly odd given that the November 2020 election was just one month away).

United States District Court
Northern District of California

**2. Plaintiffs' Arguments**

Plaintiffs primarily make two arguments in their brief and at the hearing as to why, in spite of Prop B, they are likely to succeed on the merits in their claim that the secondary-contributor requirement violates the First Amendment. First, Plaintiffs argue that this Court must apply strict scrutiny. Second, Plaintiffs argue that Prop F cannot even survive exacting scrutiny in light of the Supreme Court's recent decision in Americans for Prosperity Foundation v. Bonta, 141 S. Ct. 2373 (2021) (AFPF). The Court disagrees on both counts.

Plaintiffs are mistaken that the disclaimers are content-based restrictions that must be evaluated under strict scrutiny. See TRO Mot. at 13. It's true that, in Heller, the Ninth Circuit analyzed a disclaimer law as a content-based restriction because it "requir[ed] a speaker to reveal her identity while speaking" as opposed to merely "requiring her to reveal it in an after-the-fact reporting submission to a governmental agency." 378 F.3d at 992. But later Supreme Court cases "made clear that exacting scrutiny, not strict scrutiny, is applicable to campaign finance disclosure requirements." Brumsickle, 624 F.3d at 1013; see John Doe No. 1 v. Reed, 561 U.S. 186, 196 (2010) (exacting scrutiny applies to a disclosure rule); Citizens United, 558 U.S. at 366–67 (exacting scrutiny applies to a rule mandating a disclaimer that takes up time or space in an advertisement). Exacting scrutiny therefore applies even when a disclaimer requires a speaker to reveal her identity while speaking, and even when it takes up a considerable amount of space on an advertisement. And although the six justices in the AFPF majority differed on how to frame the standard, they did not disturb the "exacting scrutiny" formulation.[2] See 141 S. Ct. at 2383.

Plaintiffs' other arguments depend on the view that AFPF substantially changed the "exacting scrutiny" standard or otherwise controls the outcome here. In AFPF, the

[2] At least six justices agreed that the "exacting scrutiny" formulation from Citizens United was correct. See 141 S. Ct. at 2383 (Roberts, C.J.) (plurality opinion) (reaffirming on behalf of three justices that "compelled disclosure requirements are reviewed under exacting scrutiny"); see also id. at 2396 (Sotomayor, J., dissenting) (agreeing, on behalf of three justices, that exacting scrutiny is appropriate). But see id. at 2390 (Thomas, J., concurring) (endorsing strict scrutiny); id. at 2391–92 (Alito, J., concurring) (declining to specify a level of scrutiny but stating that exacting scrutiny has "teeth").

Supreme Court struck down a California regulation that required tax-exempt charities to disclose their major donors to the state Attorney General to assist in investigating fraud. The Court held that the regulation burdened the plaintiffs' First Amendment associational rights because their donors would be chilled, noting that the state's "assurances of confidentiality" rang hollow because it had not kept the information confidential in the past. Id. at 2388. The Court acknowledged that the state's interest in investigating fraud was substantial and could satisfy exacting scrutiny. Id. at 2385–86. But, in reviewing the trial court record, it found that there was no "single, concrete instance in which pre-investigation collection of a Schedule B did anything to advance the Attorney General's investigative, regulatory or enforcement efforts." Id. at 2386. Consequently, there was a "dramatic mismatch" between a "dragnet" regulation that required nearly 60,000 charities to disclose their donors and the state's interest in more easily investigating fraud—an interest the regulation did not even meaningfully assist. Id. at 2386, 2387. The Court explained that "a substantial relation to an important interest is not enough to save a disclosure regime that is insufficiently tailored." Id. at 2384.

AFPF provides relatively little direct guidance here, as this case arises in the distinct context of information that contextualizes political speech before an election. On June 7, San Francisco voters will vote for fourteen offices and eight propositions, some of which concern abstruse issues such as City law on solicitation of behested payments. Voters "have jobs, families, and other distractions." Getman, 328 F.3d at 1106. Bombarded by so many issues, voters may struggle to cast an informed and meaningful vote if they do not know who is speaking.[3] As noted above, "individuals and entities interested in funding

[3] A considerable body of social science and legal research substantiates this. See, e.g., Michael S. Kang, Democratizing Direct Democracy: Restoring Voter Competence Through Heuristic Cues and "Disclosure Plus", 50 UCLA L. Rev. 1141, 1157 (2003) (noting that interest group support provides reliable heuristic cues to less informed voters in issue elections); Elizabeth Garrett & Daniel A. Smith, Veiled Political Actors and Campaign Disclosure Laws in Direct Democracy, 4 Election L.J. 295, 296-99 (2005) (similar); Arthur Lupia, Shortcuts Versus Encyclopedias: Information and Voting Behavior in California Insurance Reform Elections, 88 Am. Pol. Sci. Rev. 63, 71–72 (1994) (finding, in a study of California voters, that knowledge of interest group alignment assisted voters with little knowledge of insurance reform in approximating the vote patterns of informed voters, as compared to a control group of uninformed voters without this

election-related speech often join together in ad hoc organizations with creative but misleading names." Heller, 378 F.3d at 994. Prop F assists voters in determining who is speaking, and if that speaker has a "creative and misleading" name, who is most closely associated with that speaker. That governmental interest is far more substantial than the state's interest in AFPF of administrative ease in investigating fraud.

Further, the Court still finds that Prop F is narrowly tailored to its governmental interest. See Prop B, 440 F. Supp. 3d at 1056 ("It is hardly novel or implausible to suggest that the informational interest described above is better served by more noticeable, easier-to-read font or more obvious, difficult to ignore, and complete disclaimers."). Plaintiffs read the Supreme Court's statements in AFPF that exacting scrutiny requires tailoring to suggest that a law cannot stand if hypothetical alternatives could also inform voters. See 141 S. Ct. at 2384. They point to two. First, each voter could go down to the Ethics Commission and look up secondary contributors. TRO Mot. at 17–18. Second, the City could design a regulatory regime by which committees regularly notify the Ethics Commission of its secondary contributors so that the City can maintain a website to inform voters of those contributors. Id. at 18. But Citizens United nowhere implied that an election-related disclaimer passes exacting scrutiny only if no hypothetical alternative disclosure regime is conceivable. Moreover, Plaintiffs provide no plausible reason to think that either of their proposals would succeed at informing voters. Because "fewer people are likely to see" disclosure requirements, they are "a less effective method of conveying information" to voters than disclaimers. Majors v. Abell, 361 F.3d 349, 353 (7th Cir. 2004). And disclosure in person at the Ethics Commission or online would not provide the information contemporaneously with the speech. In short, Plaintiffs' proposals appear unlikely to achieve the governmental interest at all. Requiring a disclaimer on the advertisement achieves this interest and does so in a sufficiently tailored way.

As in Prop B, Plaintiffs provide virtually no evidence that their First Amendment

---

heuristic).

rights are burdened. To challenge the constitutionality of a law, a plaintiff must show a burden. See, e.g., AFPF, 141 S. Ct. at 2381 (noting that the plaintiffs introduced evidence of "threats, harassing calls, intimidating and obscene emails, and even pornographic letters"). Plaintiffs here provide only vague supposition. They note that one of Ed Lee Dems' main donors is the committee David Chiu for Assembly 2022, even though Chiu has left the California Assembly and is now the City Attorney. Cheng Decl. ¶ 7. They argue that "the disclaimer San Francisco requires would lead voters to believe that Mr. Chiu is running for another office and improperly taking positions on City issues." TRO Mot. at 16. Yet this claim of voter confusion is entirely speculative. See Washington State Grange, 552 U.S. at 457 n.9 ("We are aware of no case in which the mere impression of association was held to place a severe burden on a group's First Amendment rights."); id. at 455 ("[W]e have no evidentiary record against which to assess their assertions that voters will be confused."). And because Plaintiffs do not make any showing that information about SPB's secondary-contributors would mislead voters, the Court has no basis to conclude that the government's informational interest is at all attenuated—particularly given that 77% of the voters enacted this rule in the first place.[4]

Plaintiffs also lack any concrete or specific evidence that their political donations will be chilled. The treasurer of Ed Lee Dems avers that "[t]he Club has donors who would be upset to end up on disclaimers on issues that they have no interest in, or even

---

[4] Plaintiffs note that the D.C. Circuit has upheld an FEC rule that was based on the agency's reasoning that an overly expansive donor disclosure regime might "mislead voters as to who really supports the communications." Van Hollen v. Fed. Election Comm'n, 811 F.3d 486, 497 (D.C. Cir. 2016); see TRO Mot at 16. But out-of-circuit dicta in an administrative law case arising under the "very deferential" arbitrary-and-capricious standard is not a substitute for evidence of how a rule operates on the ground as to certain plaintiffs. Id. at 497–98. And it is notable that, although Prop F has been in effect for two years, Plaintiffs still have not produced evidence that actual San Francisco voters are confused or misled.

Plaintiffs insist that information about secondary contributors is not useful to voters because some of them may not support the speech. Of course, they have not made any showing that any secondary contributors do not support SPB's speech. But even if a secondary contributor did not have an explicit position on the issue, the identity of a secondary contributor might communicate helpful information. Where many advocacy groups have misleading names—and where voters need informational shortcuts to competently vote on eight propositions—it may be nearly as useful a heuristic for voters to know which entities or people are generally aligned with or affiliated with the speaker. Cf. Garrett & Smith, Veiled Political Actors, 4 Election L.J. at 297.

contrary positions on. They would withdraw their support if they knew that Ed Lee Dems supported groups making communications that triggered such on-communication disclosure." Cheng Decl. ¶ 9. David similarly declares that "[p]otential donors have expressed concern to me about the secondary disclosure rules and are more reluctant to contribute to committees where their donors need to be disclosed" and they "may not wish to have their names and contribution amounts appear on campaign advertisements." David Decl. ¶ 20. These assertions are conclusory and speculative. No concrete evidence in the record indicates that Ed Lee Dems' top donors are reluctant to donate to Ed Lee Dems because of SPB's required disclaimer, nor even that those donors have any opinion about SPB's proposed message or Prop B itself. (Without evidence, it is difficult for the Court to infer that the Building Inspection Commission is a controversial topic about which SPB's secondary contributors invariably have strong views.) Simply put, Plaintiffs have not produced "evidence suggesting . . . that [the law] actually and meaningfully deter[s] contributors."[5] Family PAC, 685 F.3d at 807.

For these reasons, Plaintiffs are not likely to succeed in their claim that the secondary-contributor requirement violates the First Amendment.[6]

**B. Other Winter Factors**

The "most important" Winter factor, likelihood of success on the merits, favors the

[5] Although this is beyond the scope of this as-applied challenge, there is no evidence that other committees or donors have been burdened by the requirement during the more than two years that it has been in effect—indeed, the opposite appears to be true. See Canning Decl. (dkt. 30) ¶ 2 (Acting Senior Policy Analyst for the San Francisco Ethics Commission: "To the best of my knowledge, since the voters enacted Proposition F in 2019, the Ethics Commission has not received complaints/feedback from committees that would suggest that committees other than the Yes on Prop B and San Franciscans Supporting Prop B committees had difficulty complying with Proposition F's requirements."); cf. AFPF, 141 S. Ct. at 2388 (finding that the chilling effect was "real and pervasive" because "hundreds of organizations" of different ideologies supported the challenge).

[6] Plaintiffs also appear to argue that the required disclaimer is too large in comparison to the size of their proposed advertisement. See TRO Mot. at 19-23. The Court already dealt with (and agreed with) some of these same arguments two years ago. See Prop B, 440 F. Supp. 3d at 1056. But Plaintiffs here fail to tie these arguments to the issue to be decided in this motion—that is, "Whether the on-communication secondary donor disclosure requirements at S.F. Code § 1.161(a) are unconstitutional and should be enjoined," id. at 3. The Court continues to adhere to its view in Prop B that the disclaimer rule may not be constitutionally applied to small ads. In any case, the City has agreed not to enforce the law under those circumstances. See Steeley Decl. (dkt. 29) ¶ 5.

City. VidAngel, 869 F.3d at 856. Plaintiffs' arguments as to the other Winter factors largely rely on its position that it has demonstrated a likelihood of success on the merits. Because the burden on Plaintiffs is "modest" and the government has an important interest in informing voters before an election, the Court concludes that Plaintiffs will not suffer irreparable harm. See Family PAC, 685 F.3d at 807. For similar reasons, Plaintiffs have not shown that the balancing of the equities and the public interest favors an injunction. See Winter, 555 U.S. at 20. Plaintiffs fail to demonstrate that any of the Winter factors weigh in favor of emergency relief.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the motion for a temporary restraining order or preliminary injunction.

**IT IS SO ORDERED.**

Dated: June 1, 2022



CHARLES R. BREYER
United States District Judge